UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 12-60460-CIV-ZLOCH/HUNT

A.R., by and through her next friend,
SUSAN ROOT, *et al.*,

    Plaintiffs,

v.

ELIZABETH DUDEK, in her official capacity as
Secretary of the Agency for Health Care
Administration, *et al.*,

    Defendants.
_____/

UNITED STATES OF AMERICA

    Plaintiff,

v.

STATE OF FLORIDA

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This cause is before this Court on Defendants'[1] Motion for Judgment on the Pleadings, filed on April 20, 2015. ECF No. 341. On October 9, 2014, the Honorable

---

[1] "Defendants" are collectively Elizabeth Dudek, in her official capacity as Secretary of the Agency for Health Care Administration; John Armstrong, M.D., in his official capacity as State Surgeon General and Secretary of the Florida Department of Health; and Cassandra G. Pasley, in her official capacity as Director of Children's Medical Services of the Florida Department of Health.

On January 30, 2015, Defendant eQHealth Solutions Inc. and Plaintiffs filed a Joint Stipulation of Dismissal with Prejudice, and this Court entered a subsequent Final Order of Dismissal as to eQHealth. ECF No. 321–22.

William J. Zloch referred to the undersigned United States Magistrate Judge all pretrial motions for report and recommendation or disposition. ECF No. 275; see also 28 U.S.C.A. § 636(b); S.D. Fla. L.R., Mag. R. 1. On July 14, 2015, the undersigned held a hearing on the matter. ECF No. 386. Having heard oral argument and having carefully reviewed Defendants' Motion, the Response and Reply thereto, the entire case file, and the applicable law, and being otherwise duly advised in the premises, it is hereby recommended that Defendants' Motion for Judgment on the Pleadings be GRANTED IN PART and DENIED IN PART, as more fully set forth herein.

## BACKGROUND

In this putative class action, Plaintiffs—A.R., C.V., M.D., C.M., B.M., T.F., A.C., A.G., L.J., and T.H.[2]—are children who have been diagnosed as medically fragile[3] or children who need skilled care services[4] through Florida's Medicaid program.[5] On

---

[2] Since the commencement of this action, Plaintiffs T.F., L.J., and A.C. have died. See ECF Nos. 147, 245, 260.

[3] "Medically Fragile" means a person

> who is medically complex and whose medical condition is of such a nature that he is technologically dependent, requiring medical apparatus or procedures to sustain life, e.g., requires total parental nutrition (TPN), is ventilator dependent, or is dependent on a heightened level of medical supervision to sustain life, and without such services is likely to expire without warning.

Rule 59G-1.010(165), Fla. Admin. Code.

[4] Florida Administrative Code Rule 59G-4.290(3) provides as follows:

(3) Skilled Services Criteria.
    (a) To be classified as requiring skilled nursing or skilled rehabilitative services in the community or in a nursing facility, the recipient must require the type of medical, nursing or rehabilitative services specified in this subsection.
    (b) Skilled Nursing. To be classified as skilled nursing service, the service must meet all of the following conditions:
        1. Ordered by and remain under the supervision of a physician;
        2. Sufficiently medically complex to require supervision, assessment, planning, or intervention by a registered nurse.
        3. Required to be performed by, or under the direct supervision of, a registered nurse or other health care professionals for safe and effective

2

March 13, 2012, Plaintiffs filed the instant action against Defendants. On August 23, 2012, Plaintiffs filed their Second Amended Complaint (hereinafter, the "Complaint"), which is the operative pleading in this case. Plaintiffs seek injunctive and declaratory relief against Defendants. At the time of the Complaint A.C., A.R., C.V., M.D., C.M., B.M., and T.F. were "at risk" Plaintiffs who live at home but were at risk of unnecessary institutionalization in nursing facilities. T.H., L.J., and A.G. were institutionalized Plaintiffs who had been placed in nursing facilities. However, no Plaintiffs are currently institutionalized. ECF No. 237 at 13.

On July 22, 2013, the United States filed an action against the State of Florida—challenging the same State policies and procedures—seeking injunctive and declaratory relief, as well as compensatory damages.[6] United States v. Florida, No. 13-CV-61576, ECF No. 1. On December 6, 2013, this Court consolidated Plaintiffs' action with the United States' case because both actions involved common questions of law and fact.[7] See ECF No. 214.

---

performance;
4. Required on a daily basis;
5. Reasonable and necessary to the treatment of a specific documented illness or injury; and
6. Consistent with the nature and severity of the individual's condition or the disease state or stage.

Rule 59G-4.290(3), Fla. Admin. Code.

[5] "Medicaid is a cooperative federal-state program that provides federal funding for state medical services to the poor. See Wilder v. [Va. Hosp. Ass'n], 496 U.S. 498, 502 [ ] (1990). State participation is voluntary; but once a State elects to join the program, it must administer a state plan that meets federal requirements." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 433–34 (2004).

[6] The United States' claim against the State is based solely on an alleged violation of Title II of the ADA.

[7] For ease of reference, "Plaintiffs" refers to the named plaintiffs and the United States government will be referred to by proper name.

3

The Complaint alleges that Defendants are denying Medicaid services to Plaintiffs, including private-duty nursing ("PDN") services, due to the adoption of "uniform policies, practices, and regulations to reduce [PDN] services." ECF No. 62 at ¶¶ 18–19. Plaintiffs further claim that Defendants "failed and continue to fail to provide medically necessary services in home and community settings to Medicaid recipient children in Florida." Id. at ¶ 20.

Based on the pleaded facts, Plaintiffs ask this Court to declare that Defendants' policies, regulations, actions, and omissions are unnecessarily institutionalizing Plaintiffs and Plaintiff class members or putting Plaintiffs at risk of being placed into segregated facilities, in violation of Title II of the Americans With Disabilities Act, 42 U.S.C. §§ 12131–12165 ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Medicaid Act, 42 U.S.C. §§ 1396–1396v ("Medicaid"); the Nursing Home Reform Amendments to the Medicaid Act, 42 U.S.C. § 1396r ("NHRA"); Early and Periodic Screening Diagnostic, and Treatment Services, 42 U.S.C. § 1396d(r) ("EPSDT Provisions");[8] and 42 U.S.C. § 1983. Id. at ¶ 21. Plaintiffs also seek a permanent injunction requiring Defendants to (1) "stop segregation of medically fragile children who are unnecessarily institutionalized in nursing homes and to provide integrated community services;" and (2) "perform adequate Level I and Level II PASSR reviews to institutionalized children and to provide such services as determined by the Level II screening[.]" ECF No. 62 at 46. Furthermore, Plaintiffs ask this Court to order

---

[8] One requirement of accepting Medicaid funding from the Federal Government "is that every participating State must have an [EPSDT] program. EPSDT programs provide health care services to children to reduce lifelong vulnerability to illness or disease. The EPSDT provisions of the Medicaid statute require participating States to provide various medical services to eligible children, and to provide notice of the services." Frew, 540 U.S. at 433–34.

4

Defendants to (1) "provide [PDN] services that will allow the Plaintiffs and Plaintiff class members to live in their homes and communities;" and (2) "cease the practice of denying or reducing Plaintiff and Plaintiff Class members' services at recertification where there has been no change in the medical necessity of such services[.]" Last, Plaintiffs seek an "[a]ward of compensatory services . . . to ameliorate or remediate the conditions resulting from the Defendants' failure to provide the medically necessary services," as well as attorneys' fees and costs.  ECF No. 62 at 46.

It is the final request for relief that is the subject of the instant Motion—"compensatory services."  Specifically, Defendants argue that awards of compensatory services are limited to suits arising from the Individuals with Disabilities Education Act (the "IDEA"), which authorizes such awards to injured children.  ECF No. 341 at 1–2. Likewise, Defendants argue that nothing in the ADA, the Rehabilitation Act, or the Medicaid Act authorizes awards of compensatory services.  ECF No. 341 at 3.

Plaintiffs argue that their request for compensatory services is not premised on the IDEA; rather, Plaintiffs believe that an award of compensatory services is within this Court's general equitable powers and awardable based on the EPSDT Provisions of the Medicaid Act.  ECF No. 344 at 7.

ANALYSIS

Federal Rule of Civil Procedure 12(c) provides that "[a]fter pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."  Hawthorne v. Mac Adjustment, Inc., 140

F.3d 1367, 1370 (11th Cir. 1998). A reviewing court must accept the pleaded facts as true and view them in a light most favorable to the nonmoving party. Id.

Defendants request this Court to grant judgment in their favor as to Plaintiffs' request for compensatory services intended to ameliorate or remediate the conditions resulting from Defendants' failure to provide medically necessary services. In support, Defendants cite Spychalsky v. Sullivan, No. CV010958DRHETB, 2003 WL 22071602 (E.D.N.Y. Aug. 29, 2003), for the proposition that the ADA, the Rehabilitation Act, and the Medicaid Act do not permit Plaintiffs to seek an award of compensatory services similar to that awarded in cases arising under the IDEA.

In Spychalsky, a pro se plaintiff filed an action under the ADA, the Rehabilitation Act, and various state laws, but not the Medicaid Act. Spychalsky, 2003 WL 22071602 at *1. In treating the plaintiff's Title II claims as Title III claims under the ADA, the court granted judgment in favor of the defendants because the plaintiff sought monetary damages, which are not available to private plaintiffs under the ADA. Id. at *5. The plaintiff had argued that he was entitled to "compensatory education damages." Id. at *6. In dismissing his argument, the court reasoned that compensatory education damages are only awarded in IDEA cases. Id.

Spychalsky is distinguishable from the instant case in two ways. First, Spychalsky did not involve claims under the EPSDT Provisions. Second, the plaintiff in Spychalsky was seeking damages, not injunctive relief. Notwithstanding Spychalsky's inapplicability to the case at bar, Plaintiffs fail to direct this Court to any law showing that they are entitled to "compensatory services" for Defendants' past failure to adhere to federal requirements. It seems Plaintiffs have taken some liberal readings of the

6

EPSDT Provisions to ask this Court to mandate Defendants to provide services that would remediate Defendants' past failures. There is no question that Plaintiffs are not entitled to monetary damages. The only question is whether an injunction requiring "compensatory services" is tantamount to money damages or permissible in this case.

Plaintiffs' Response cites many cases involving injunctive relief in Medicaid cases; however, none of the cited law includes an award of compensatory services. To the extent that Plaintiffs think the catchall section of the EPSDT Provisions validates the request for compensatory services, Plaintiffs are incorrect. The catchall provision simply explains the State's duty to provide "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C.A. § 1396d(r)(5). This provision does not mention compensatory services to correct or ameliorate issues *created* by the State, it references issues *discovered* by the screening services. Thus, this provision alone does not support Plaintiffs' request for compensatory services.[9]

Plaintiffs have not shown this Court any precedent awarding "compensatory services" as injunctive relief. Instead, Plaintiffs cite K.G. ex rel. Garrido v. Dudek, 839 F. Supp. 2d 1254 (S.D. Fla. 2011), for the proposition that a court may order compliance with § 1396d(r)(5). Contrary to Plaintiffs' position, K.G. only supports an argument that a party may obtain a preliminary injunction requiring the State to comply with

---

[9] In Plaintiffs' own words: "The only mention of compensatory services in the entire complaint is Paragraph 11 of the prayer for relief is just that, a request to the Court upon a finding of liability that the claims sued on are valid and the court should structure the injunctive and declaratory relief using methods previously relied on by other courts so that the intent of the EPSTD and the ADA are carried out." ECF No. 344 at 10.

§ 1396d(r)(5)—it does not stand for the proposition that "compensatory services" are awardable.

Accordingly, because this Court's equitable powers only allow for injunctive relief requiring Defendants to comply with the EPSDT Provisions, which would necessarily require Defendants to "correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services," Plaintiffs' request for "compensatory services" is unfounded. However, Plaintiffs' prayer for relief will be interpreted as a request for this Court to craft an injunction that incorporates the catchall provision of the EPSDT, if applicable.

## RECOMMENDATION

Based on the foregoing, the undersigned RECOMMENDS that Defendants' Motion for Judgment on the Pleadings, ECF No. 341, be GRANTED IN PART and DENIED IN PART as set forth herein. The parties will have fourteen (14) days after being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge. See 28 U.S.C.A. § 636(b)(1) (providing procedure for review of magistrate judge report and recommendation). Failure to timely file objections shall bar the parties from a de novo determination by Judge Zloch of any issue covered in the Report and shall bar the parties from challenging, on appeal, the factual findings accepted or adopted by this Court, except upon grounds of plain error or manifest injustice. See Thomas v. Arn, 474 U.S. 140, 145–53 (1985) (holding that party waives appellate review of magistrate judge's factual findings that were not objected to within period prescribed by 28 U.S.C. § 636(b)(1)); see also Dupree v. Warden, 715 F.3d 1295, 1300 (11th Cir. 2013) (holding

that under current Eleventh Circuit rule: "[T]he failure to object limits the scope of our appellate review to plain error review of the magistrate judge's *factual findings*[; however,] failure to object to the magistrate judge's *legal conclusions* does not preclude the party from challenging those conclusions on appeal.").

DONE and SUBMITTED at Fort Lauderdale, Florida, this 22d day of July 2015.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Honorable William J. Zloch

All Counsel of Record