UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 12-60460-CIV-ZLOCH/HUNT

C.V., by and through his next friends,
Michael and Johnette Wahlquist, et al.,

 Plaintiffs,

v.

JUSTIN SENIOR, in his official capacity
as Interim Secretary of the Agency for
Health Care Administration, et al.,

 Defendants.

_____/

## REPORT & RECOMMENDATION ON THE STATE'S MOTION TO DISMISS A.G.'S CLAIM AS MOOT

This matter is before this Court on the State's Motion to Dismiss A.G.'s Claim as Moot, filed August 30, 2016. ECF No. 540. The Honorable William J. Zloch previously referred this case to the undersigned for a report and recommendation concerning disposition of all dispositive motions. ECF No. 275; *see also* 28 U.S.C. § 636(b); S.D. Fla. Mag. R. 1. The undersigned construes the motion as a Motion to Dismiss for Lack of Subject-Matter Jurisdiction. *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007). Having carefully reviewed the motion, the response, the reply, the supporting documents, the entire case file, and applicable law, and being otherwise fully advised in the premises, the undersigned hereby RECOMMENDS that Florida's Motion to Dismiss, ECF No. 540, be GRANTED in part and DENIED in part.

## I. Background

For purposes of resolving the instant motion, it is unnecessary to recount in detail the factual background and procedural history leading up to this point. It is enough to say that the Plaintiffs brought this lawsuit to protect the rights and well-being of disabled children who were unnecessarily institutionalized or at risk of unnecessary institutionalization in one of Florida's nursing homes. The Complaint raises five counts against various Florida state actors in their official capacity in search of "systemic" declaratory and injunctive relief under the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983.

One of the Plaintiffs—A.G.—is no longer a child; he is over twenty-one years old. With trial soon approaching, the State of Florida has now moved to dismiss his claims against them. ECF No. 540. According to Florida, "[b]ecause A.G. is [no longer] subject to the alleged policies that the Private Plaintiffs challenge, and because A.G. seeks only prospective relief, [all of] his claims are moot." *Id.* at 4. A.G. opposes dismissal of any of his claims, arguing that his claims are not limited by age. ECF No. 545 at 4.

## II. Discussion

"A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief." *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1308 (11th Cir. 2011) (quoting *Jews for Jesus, Inc. v. Hillsborough Cty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir.1998)). The present issue, therefore, is whether

A.G. turning twenty-one means he would no longer be entitled to meaningful relief if he prevailed at trial.  *See id.*  To answer this question, this Court must look to the claims presented and the relief requested by Plaintiffs.

As previously stated, the Complaint was filed on behalf of two distinct groups of children—those who are unnecessarily institutionalized and those who are "at risk" of unnecessary institutionalization.  At the time the Complaint was filed, A.G. was institutionalized in a nursing facility.  However, he was later transitioned to the community.[1]  ECF No. 345-1 at 3; ECF No. 509 at 15.  Therefore, the undersigned will address his claims as an "at risk" individual.  *See* ECF No. 545 at 19 n.8.

### A. Counts 1 and 2

Counts 1 and 2 raise claims under Title II of the ADA and § 504 of the Rehabilitation Act, respectively.  ECF No. 62 [hereinafter Compl.] at 40–43.  Because the Rehabilitation Act uses the same standards as the ADA, both claims may, and will, be addressed together.  *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005).

With respect to all at-risk children, the Complaint generally alleges that Florida violated the ADA and the Rehabilitation Act by: (1) failing to provide Plaintiffs "appropriate community based services"; (2) denying Plaintiffs "medically necessary services"; and (3) denying Plaintiffs "access to existing community programs."  Compl. ¶¶ 309, 317.  In its response in opposition, Plaintiffs did not explain in any reasonable detail which community-based services are not provided to A.G., which medically necessary services are being denied to A.G., or what community based programs A.G. is being denied access to.  Instead, Plaintiffs repeated in conclusory fashion the general

---

[1] The Complaint was not amended to address this important change in circumstances.

elements that make up a cause of action under the ADA and the Rehabilitation Act, and stated they are met. ECF No. 545 at 5–6. Additionally, Plaintiffs pointed to page 22 of the Complaint, which discusses A.G.'s situation more specifically. *Id.*

Page 22 of the Complaint makes the following allegations that are arguably relevant:

> 156. No Level II PASRR evaluation or review was ever performed.
>
> 157. Due to A.G.'s improving condition and reduction of funds paid to Lakeshore from Medicaid, Lakeshore is denying needed services, such as physical and speech therapies.
>
> 158. A.G.'s primary language is Arabic, and contrary to Title VI of the Civil Rights Act of 1964, Lakeshore denied A.G. any language assistance with respect to its services, benefits, or encounters and as such, left A.G. further isolated and bereft of needed programs and services for any improvement.
>
> 159. A.G.. [sic] needs Medicaid services such as private duty nursing in order to be placed at home or in a community setting.

Compl. 22.[2]

The first three allegations in paragraphs 156–58 are no longer susceptible to meaningful relief in this case because A.G. is no longer institutionalized in a nursing facility. In other words, even if this Court were to order that a Level II PASRR be performed, or that Lakeshore provide physical and speech therapies and/or language assistance to A.G., he would not benefit. The purpose of a Level II PASRR is to determine whether an individual actually requires institutionalization in a nursing facility

---

[2] The undersigned notes that Plaintiffs did not raise a claim under Title VI of the Civil Rights Act of 1964.

4

and, if so, whether the nursing facility can meet the individual's specific needs.[3]  *See* Compl. ¶¶ 99, 102; *see also* ECF No. 329 at 8–9.  A.G. is no longer at Lakeshore, or any other nursing facility for that matter.[4]

The other allegation, located at paragraph 159, however, is capable of redress in this case.  Private duty nursing services are not only available to children under the age of twenty-one.  Florida itself stated that "PDN services are available to eligible adults under the iBudget Waiver administered by the Agency for Persons with Disabilities . . . ."  ECF No. 540 at 5 n.5.  Florida suggests that this Court should ignore this fact because "the iBudget Waiver is a separate program from the EPSDT program, and the Complaint makes no allegations with respect to the iBudget Waiver."[5]  *Id.*  But Florida offers no real analysis of this issue, and cites no authority to support its position.  *See id.*

The undersigned notes that Counts 1 and 2 do not depend on the failure to properly administer the EPSDT program.  Only Count 3 does (see below).  The ADA (Count 1) and the Rehabilitation Act (Count 2) are not limited by age, and it would be unreasonable for Florida to argue that A.G. is no longer entitled to private duty nursing services under Florida's Medicaid programs based solely on his age.  *See Hunter v. Chiles*, 944 F. Supp. 914, 920 (S.D. Fla. 1996).  According to the Complaint, the failure

---

[3] Florida's administration of the PASRR program is specifically challenged in Count 5. Additionally, in their Prayer for Relief, Plaintiffs ask that PASRR reviews be performed only for institutionalized children. Compl. 46, ¶ (10).

[4] In a footnote, Plaintiffs stated that "the 'capable of repetition yet evading review' exception to the mootness doctrine *might apply*." ECF No. 545 at 19 n. 8 (emphasis added).  The undersigned previously rejected that argument because "A.G. has not been in and out of institutions," ECF No. 287 at 24, and Plaintiffs have failed to offer any reason to reconsider that conclusion today.

[5] EPSDT stands for Early and Periodic Screening, Diagnostic, and Treatment Services.

to provide private duty nursing services to A.G. is one factor that makes him at risk of unnecessary institutionalization. This is apparently a legally cognizable claim after *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). *See, e.g., Davis v. Shah*, 821 F.3d 231, 263 (2d Cir. 2016). *But see Amundson ex rel. Amundson v. Wisconsin Dep't of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013).

The undersigned also notes that it is understandable why the Complaint does not mention the iBudget Waiver program. At the time the Complaint was filed, all Plaintiffs were children. Nevertheless, Florida has always known the ages of the Plaintiffs, and was on notice that some of the children would become adults during this litigation. *See* Part I.B., *infra*. The mere fact that A.G. is older does not change the true substance of his request for private duty nursing services. Thus, to the extent Florida is arguing that it would violate due process to allow Counts 1 and 2 to go forward, the undersigned finds Florida's understanding of due process is too narrow.

On the other hand, A.G. argues that it did not intend to suggest that private duty nursing was the *only* service that A.G. could benefit from. ECF No. 545 at 3. Plaintiffs state that A.G. could benefit from Medicaid services "in general," and that private duty nursing was provided as an example. *Id.* However, A.G.'s argument ignores the fact that federal courts are courts of limited jurisdiction. A.G. lacks standing to raise a generalized Medicaid claim without alleging specific harm. Apart from private duty nursing services, A.G. has failed to explain in any reasonable detail which services he is not being provided. Accordingly, the undersigned rejects A.G.'s suggestion that there are other services at issue with his claim.

Elsewhere, Florida argues that A.G.'s claim regarding private duty nursing services is "not credible" because he never requested those services following his discharge from a nursing facility in August 2013. ECF No. 546 at 8. While this assertion gives the undersigned cause for concern, the undersigned declines to address the credibility of A.G.'s claims on a motion to dismiss for lack of subject matter jurisdiction. Florida may, and should, raise that argument at trial.

In sum, the undersigned cannot say that A.G. would not be entitled to meaningful relief as to Counts 1 and 2 if he prevailed at trial. The Complaint asks for private duty nursing services to be provided to A.G., Compl. 46, ¶ (7), and private duty nursing services are available to adults, ECF No. 540 at 5 n.5. Therefore, Counts 1 and 2 are not moot. *See Nat'l Ass'n of Boards of Pharmacy*, 633 F.3d at 1308.

### B. Count 3

Count 3 raises a § 1983 claim alleging that Florida violated A.G.'s rights under EPSDT provisions of the Medicaid Act. Compl. 43. Specifically, Plaintiffs claim that "Defendants' regulations, rules, policies, procedures, customs and practices for providing private duty nursing, below the level that is medically necessary, violate the EPSDT provisions of the federal Medicaid statute." Compl. ¶ 322.

Although the precise basis is unclear, Plaintiff opposes dismissal of Count 3. ECF No. 545 at 6–8. To the extent that A.G. is arguing that A.G.'s claim under Count 3 is not moot, the undersigned finds that argument is not supported by a plain reading of Florida law and is inconsistent with A.G.'s prior position in this case.

The applicable EPSDT provision—cited by Plaintiff in support of his argument—provides as follows:

> The agency shall pay for early and periodic screening and diagnosis of a recipient *under age 21* to ascertain physical and mental problems and conditions and all services determined by the agency to be medically necessary for the treatment, correction, or amelioration of these problems and conditions, including personal care, private duty nursing, durable medical equipment, physical therapy, occupational therapy, speech therapy, respiratory therapy, and immunizations.

Fla. Stat. § 409.905(2) (emphasis added). In support of their prior Motion for Class Certification, Plaintiffs argued that A.G. faces a likelihood of aging out of EPSDT before the end of this case. ECF No. 401 at 3. Plaintiffs stated, "A child eligible for EPSDT has to be under the age of twenty-one years old." *Id.* at 4 (citing 42 U.S.C. § 1396d(a)(i)). Plaintiffs have offered no valid reason to ignore their own interpretation of the statute today. *See* ECF No. 545 at 3 n.1.

Plaintiffs additionally argue that Florida's decision to provide private duty nursing services to children under the EPSDT program would violate the rational basis test. *See* ECF No. 545 at 7–8 (citing *Hunter*, 944 F. Supp. at 919–20). However, as previously explained, Florida does not deny private duty nursing services to individuals based solely on their age. Private duty nursing services are available to adults under a different program, and Plaintiffs cannot seriously argue that Florida's decision to separately administer programs for children and adults is irrational. Therefore, the undersigned rejects Plaintiffs arguments and finds that Count 3 is moot.

### C. Count 4

Count 4 raises a § 1983 claim alleging that Florida violated A.G.'s rights under the reasonable promptness provision of the Medicaid Act. Compl. 44. Specifically, Plaintiffs claim that "Defendants' regulations, rules, policies, customs, and practices,

which limit the provision of medically necessary community-based services and supports, as well as medically necessary specialized services, result in extended delays and outright denials of medically necessary care to the Plaintiffs and members of the Plaintiff class." *Id.*

In the instant motion, Florida appears to only take issue with the lack of specificity of Count 4. ECF No. 546 at 8–9. However, to the extent Florida believes that Count 4 fails to satisfy the pleadings requirements of Rule 8, Plaintiffs should have raised that argument in a timely Rule 12(b)(6) motion to dismiss. The issue now is whether Count 4 is moot, and the undersigned cannot say that it is because the reasonable promptness requirement is not limited by age.

### D. Count 5

Count 5 was brought only on behalf of the institutionalized Plaintiffs. Compl. ¶ 329 ("The institutionalized Plaintiffs reallege paragraphs 1 through 299 of the Complaint . . . ."); ECF No. 329 at 8 n.8 ("[O]nly the institutionalized Named Plaintiffs bring Count V against the State Defendants."). Again, A.G. is no longer "institutionalized." Therefore, Count V is now moot as to A.G.

### III. Recommendation

Based upon the foregoing, the undersigned hereby RECOMMENDS that Florida's Motion to Dismiss, ECF No. 540, be GRANTED in part and DENIED in part as follows:

- A. With respect to Plaintiff A.G., Counts 3 and 5 must be dismissed as moot.
- B. All other Counts should remain.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE and SUBMITTED at Fort Lauderdale, Florida this 3d day of November, 2016.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record