UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 12-60460-CIV-MIDDLEBROOKS/HUNT

UNITED STATES OF AMERICA,

    Plaintiff,

v.

THE STATE OF FLORIDA,

    Defendant.

_____/

## THE STATE OF FLORIDA'S REPLY IN SUPPORT OF ITS MOTION TO STAY DISCOVERY

    Defendant, the State of Florida, respectfully submits this reply in support of its Motion to Stay Discovery (ECF No. 672) and requests the Court either to stay discovery or, as Chief Judge Altonaga proposed to do at a recent status conference, *see* Ex. A, administratively close this case pending the Supreme Court's resolution of the State's forthcoming petition for a writ of certiorari.

## INTRODUCTION

    The question before this Court is simply whether taxpayers should bear the extraordinary expense required to facilitate the United States' second bite at the discovery apple *now*, or whether discovery should be paused—and the expense limited or avoided altogether—while the State seeks certiorari review of the Eleventh Circuit's decision and this Court considers dispositive motions that will dictate the scope of future discovery, if any. This Court should decline the United States' invitation to stray from that limited question and prejudge or hastily reject motions for summary judgment that the State has not yet filed, and which in any event are likely to succeed on the merits.

    Nor should this Court accept the United States' attempt to diminish this Court's control over its own docket by mischaracterizing the State's request to stay discovery as a motion to stay the appellate court's mandate. Like all district courts, this Court is empowered to stay discovery— even after remand from the Eleventh Circuit—when the circumstances warrant, as they do here.

    In opposing a stay, the United States advances its third new theory of standing—one wholly inconsistent with its arguments to the Eleventh Circuit and the Eleventh Circuit's recent decision.

Before this Court's dismissal in 2016, the United States claimed authority to sue under Title II of the ADA on its own behalf, to vindicate its own rights, and not on behalf of children. Before the Eleventh Circuit, the United States claimed for the first time that it sued on behalf of children who filed administrative complaints. Now, the United States asserts that an individual's allegation of discrimination is merely a box that, once checked, vests unlimited authority in the United States to pursue an unbounded investigation and lawsuit of equally unlimited breadth. According to the United States, once a single complainant files an administrative complaint, the federal government is free to go as far it wishes into all corners of the State's healthcare programs, without regard to the original complainant, and without any obligation to prove a single *Olmstead* violation as to a single child. This convenient new theory—which the United States never shared with the Eleventh Circuit—is a non-starter under basic principles of judicial estoppel, to say nothing of its substantive absurdity, and only highlights the need for dispositive-motion rulings before discovery proceeds.

The United States began its investigation more than ten years ago, and, since filing suit in 2013, never once sought to expedite proceedings in any court. Now, it seeks *another 18 months* of discovery, on top of the *three years* of discovery it has already conducted at staggering expense to the public, with nothing to show for it. Any claim that a stay will prejudice the United States is, like its chameleonic theory of standing, born of convenience and contradicted by its own conduct.

## ARGUMENT

**I.   THE STATE PROPERLY SEEKS A STAY OF DISCOVERY—NOT A STAY OF THE ELEVENTH CIRCUIT'S MANDATE.**

The State's motion did not ask this Court to stay the Eleventh Circuit's mandate, or even to stay all proceedings or to administratively close this case, as Chief Judge Altonaga proposed to do. *See* Ex. A at 10:5–11:25. Rather, the State sought only a stay of discovery while its forthcoming petition for certiorari awaits resolution by the Supreme Court, and to give this Court an opportunity to rule on dispositive motions that will dictate the scope of the case—and thus discovery—going forward.

District courts have broad discretion to stay discovery. They may certainly stay discovery while dispositive motions are pending or while a party petitions for certiorari review. *Williams v. Mohawk Indus., Inc.*, No. 4:04-cv-00003-HLM, 2007 WL 9724132, *2–4 (N.D. Ga. Jan. 16, 2007). A stay is well within this Court's inherent authority, and in no way implicates 28 U.S.C. § 2101(f).

*Williams* is instructive and confirms that a limited stay of discovery after the issuance of a

mandate is well within a district court's discretion. In *Williams*, the court rejected the argument the United States advances here, recognizing that a request to stay discovery pending the resolution of a cert petition is *not* equivalent to a request to stay an appellate court's mandate. Accordingly, a stay of discovery does not violate 28 U.S.C. § 2101(f). *Id.* at *3 ("Defendant does not seek a stay of the Eleventh Circuit's mandate in the case, but instead simply seeks a stay of discovery. . . . Consequently, 28 U.S.C. § 2101(f) does not prohibit the Court from entering a stay of discovery in the case."). The court in *Williams* granted the requested stay, concluding that "staying discovery pending the resolution of Defendant's petition for a writ of certiorari will conserve the parties' resources and the resources of the Court, and will not significantly prejudice Plaintiffs." *Id.* at *4.

The Northern District of Georgia is not alone in staying discovery after the issuance of an appellate mandate. *See*, *e.g.*, *United States v. William Beaumont Hosps.*, No. 2:10-cv-13440, 2021 WL 4472767 at *1, *3 (E.D. Mich. Sept. 30, 2021) (staying all proceedings after issuance of Sixth Circuit's mandate while defendant's petition for certiorari was pending); *Gaines v. Horowitz*, No. 1:15-cv-00587, 2019 WL 11767582, at *1–2 (E.D. Cal. July 29, 2019) (granting stay of discovery after issuance of Ninth Circuit's mandate until motion for summary judgment could be resolved); *Hernandez v. City of El Paso*, No. EP-08-cv-00222, 2011 WL 66174, at *3 n.4 (W.D. Tex. Aug. 18, 2011) (noting that district court stayed discovery pending resolution of cert petition after Fifth Circuit issued its mandate); *Carlson v. Gen. Motors Corp.*, No. 2-86-2674-a, 1991 WL 90893, at *1 (D.S.C. Mar. 14, 1991) (same as to mandate issued by Fourth Circuit); *see also In re Airport Car Rental Antitrust Litig.*, 766 F.2d 1292, 1296 (9th Cir. 1985) (approving district court's partial stay of discovery while plaintiff in related case had opportunity to petition for certiorari review).

As in *Williams*, the Eleventh Circuit's remand in this case gave "no guidelines concerning discovery and did not purport to limit [this] Court's inherent ability to manage discovery." 2007 WL 9724132, at *3. Granting a stay of discovery while the State petitions for certiorari review, and while this Court considers dispositive motions, falls well within this Court's "broad discretion . . . to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). A well-timed stay will avoid a massive expenditure of public funds, some or all of which will likely prove unnecessary.[1]

---

[1] At a recent status conference held before her recusal—and before the United States filed its response—Chief Judge Altonaga expressed that she intended to administratively close this case for precisely that reason:

> [A]s attorneys, you do a disservice to your clients, governmental clients, if you unnecessarily and needlessly engage in the furnishing of legal services, right? . . .

The United States' assertion that avoiding expense cannot justify a stay is incorrect, and its characterization of the State's interest as simply "avoiding the costs and burdens associated with discovery" is a breathtaking understatement. ECF No. 676 at 8. A stay is warranted precisely to avoid the *enormous* costs and burdens that will result—which history has shown to be inevitable—if discovery proceeds as the United States desires. The above-cited cases recognize that courts may stay proceedings to conserve resources, even after an appellate mandate issues. *See*, *e.g.*, *William Beaumont Hosps.*, 2021 WL 4472767, at *3 (recognizing that a stay of discovery while a petition for certiorari was pending "would save significant judicial resources and litigant expenses"); *Gaines*, 2019 WL 11767582, at *2 (granting motion to stay discovery because "it would be a waste of the resources of the Court and the parties to require the parties to conduct potentially unnecessary discovery"); *Williams*, 2007 WL 9724132, at *4 (staying discovery during pendency of cert petition to "conserve the parties' resources and the resources of the Court"). The Eleventh Circuit has also held that the avoidance of expenses associated with needless discovery presents such a compelling interest that district courts are sometimes duty-bound to intervene and limit discovery. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1355, 1367–68 (11th Cir. 1997).

In *Chudasama*, the Eleventh Circuit recognized that threshold questions about the scope of a case should be answered *before* parties engage in substantial discovery, and that courts have a duty to intervene and ensure that parties do not engage in extensive and unnecessary discovery on meritless claims. *Id.* at 1367–68. The court in *Chudasama* criticized the district court's failure to limit discovery before ruling on a motion to dismiss that would have sharply curtailed the scope of the litigation. *See id.*; *see also Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1133 (5th Cir. 1976) (holding that district court was entitled to stay discovery until resolution of motion for summary judgment to avoid "putting the parties to the expense" of plaintiff's "broad discovery"). The same

---

> So these . . . taxpayers' resources should be conserved to the extent possible. And so if one party . . . intends to seek Supreme Court review . . . , let this one party do so, and you can all come back here after that is over. <u>If the petition is denied, you all come back before me and then we talk about let's tee up these motions. . . . [A]nd if I deny the State its continued request to dismiss this case, then we talk about discovery. But to start undertaking about discovery that may prove unnecessary, I think would be rather irresponsible of all of us</u>."

Ex. A at 6:6–7:2 (emphases supplied); *see also id.* at 8:2–9 ("[L]et's wait to see if the Federal Government is correct in its assessment that the State will lose on its petition for certiorari and, thereafter, will also lose on these [dispositive] motions . . . . We're going to take it in those steps.").

reasoning holds true here. As Chief Judge Altonaga indicated, Ex. A at 8:2–9, the State's petition for certiorari should be addressed first; *then* summary-judgment motions should be decided *before* the United States adds another 18 months to the three years of discovery it has already conducted.

Between 2013 and 2016, the State was forced to expend *millions of dollars* in response to the United States' oppressive discovery demands—demands fueled by the United States' assertion of unlimited power to challenge the policies and practices of four state agencies. The extraordinary breadth of discovery required the State to enlist the aid of more than 40 attorneys and 12 paralegals. When all was said and done, the Magistrate Judge found that the United States had failed to prove a single *Olmstead* violation. ECF No. 501 at 35–37 & n.32. This Court is well within its discretion to avoid a repetition of that injustice by allowing case-dispositive or at least case-narrowing issues to be addressed before the United States is again let loose to pursue its reckless brand of discovery.

## II. THE UNITED STATES' LATEST THEORY OF STANDING IS IMPLAUSIBLE AND CANNOT BE RECONCILED WITH THE ELEVENTH CIRCUIT'S OPINION, OR WITH THE UNITED STATES' EARLIER REPRESENTATIONS.

In opposing a stay of discovery, the United States has debuted its newest theory of standing: once the United States receives notice of a single complaint of discrimination, it is cloaked with perpetual, unbounded authority to pursue a limitless investigation into a State's Medicaid program, and to file suit demanding systemic changes to the State's policies, without any restriction in scope to the initial complaint or complainant, and without ever proving an ADA violation as to any child.

This purported power is virtually unlimited. With the exception of checking a box to show that someone at some point complained of alleged discrimination, this latest theory of standing is barely distinguishable from the United States' original position that the ADA empowers the federal government to sue on its *own* behalf and to vindicate its *own* rights—a position the United States jettisoned on appeal, where, with an impressive display of modesty, it claimed nothing more than the right to resolve administrative complaints and, if necessary to that end, to sue on behalf of an individual complainant who enlisted the United States' assistance in the vindication of their rights.

The United States' concept of its authority to sue is incorrect for reasons that the State will fully present in a motion for summary judgment. But the illogic and inequity of the United States' latest shifts warrant some discussion. If, as the Eleventh Circuit found, the United States' standing to sue flows from individual children who file administrative complaints, then the United States cannot argue that the scope of this litigation is in no way limited by the circumstances of—or relief available to—a complainant. Indeed, if the United States is not suing to vindicate the rights of an

5

individual complainant, then it is unclear whose rights the United States is supposedly vindicating.

Equally unclear is where exactly in the "remedies, procedures, and rights" that the ADA extends to a "person alleging discrimination," 42 U.S.C. § 12133, the United States finds authority to pursue a sweeping lawsuit that has nothing to do with the circumstances of the person alleging discrimination. *See* ECF No. 676 at 9–10. As the State will show, no individual complainant could ever obtain systemic relief under *Olmstead* through "statistical and other aggregated evidence," *id.* at 10, rather than individualized proof. No individual, therefore, could ever pursue the claim the United States asserts here—a claim irreconcilable with the Eleventh Circuit's characterization of the United States' authority, and with the position the United States asserted in its appellate briefs.

The United States' latest theory is *not* the one it presented to the Eleventh Circuit—or the one it presented to this Court before dismissal in 2016. The United States' original position was that the ADA empowered it to sue for systemic relief on its own behalf, independent of the rights of individuals. ECF No. 672 at 6. The United States explicitly rejected any suggestion that it sued the State on behalf of any individual or to vindicate any individual's rights. *Id.*; *see infra* p. 6–9.

One dismissal and a full 180 degrees later, the United States argued to the Eleventh Circuit that federal enforcement stemmed from individuals who filed administrative complaints with the Department of Justice, that a federal enforcement action was part of the individual complainant's "bundle" of rights, and that the United States asserted the rights of complainants and sued on their behalf. Now, the United States again claims an infinite right to sue without any limitation on scope, as long as it received a complaint against the State from someone, at some time, on some subject.

The Supreme Court and Eleventh Circuit have spoken strongly against parties who, without "good explanation," seek to "gain a competitive advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1180–81 (11th Cir. 2017) (internal marks omitted). In *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001), the Court identified a non-exhaustive list of factors, all of which are present here, that warrant estopping a party from shifting legal positions in litigation: (1) a "later position" that is "clearly inconsistent with its earlier position"; (2) success "in persuading a court to accept that party's earlier position, so that judicial acceptance of the party's later position would create the perception that either the first or the second court was misled"; and (3) derivation of "an unfair advantage or impos[ition of] an unfair detriment on the opposing party if not estopped." *Id.* (internal marks omitted). The Eleventh Circuit similarly seeks to identify whether a later-adopted

6

inconsistent position results from mistake or intentional "manipulation." *Slater*, 871 F.3d at 1181.

The Eleventh Circuit applied the doctrine of judicial estoppel under similar circumstances in *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229 (11th Cir. 2014). In *Baloco*, the plaintiffs sought to escape the res-judicata effect of a defense verdict in a suit brought by their mothers. In the first suit, the mothers claimed to represent their children and to collect damages for their children. In the later suit, the mothers claimed that they "did not understand themselves to be representing their minor children" in the earlier suit. *Id.* at 1244–45. The district court struck the mothers' testimony, and the Eleventh Circuit affirmed, holding that the plaintiffs were judicially estopped from arguing that the mothers did not believe they had represented their children in the first lawsuit. *Id.* at 1245.

Like the plaintiffs in *Baloco*, the United States first claimed to sue and seek damages on its own behalf. Then, on appeal, it claimed to sue on behalf of individuals who filed complaints. Now, once again, it seeks systemic relief for an unlimited universe of unidentified "victims" and insists that its lawsuit is not limited to the vindication of any specific individual's rights. ECF No. 676 at 9–10. The following examples illustrate the United States' fluid and incompatible legal positions:

| **Southern District of Florida (before dismissal)** | **Eleventh Circuit (Case No. 17-13595)** | **Southern District of Florida (since remand)** |
|---|---|---|
| "The United States **has not brought and does not maintain this action on the behalf of any individuals**; rather this lawsuit is brought through the U.S. Department of Justice on behalf of the United States." (ECF No. 402-1 at 3) | "The prospect of a **DOJ enforcement action** was (and still is) an integral part of the 'remedies, procedures, and rights' . . . available to **persons alleging discrimination who decide to use the administrative enforcement process** to vindicate their rights." (Initial Br. at 22) | "To prove its case at trial, [the United States] will need . . . contact information for the current population of children with complex medical needs in Florida— **for example, some of these children were not yet born when this case began in 2013, while many children who were part of the population in 2013 have since aged into adulthood**." (ECF No. 676 at 5) |
| "The United States is **not alleging that any individual child's rights were violated** in this case . . . Violations of individuals' rights have no | "Congress adopted a federal administrative enforcement scheme in which **persons claiming unlawful discrimination may** | "As to the State's alternative contention that 'the Court should enter summary judgment to the extent the United States seeks to litigate |

| | | |
|---|---|---|
| doubt occurred, . . . but those are not the United States' claims in this litigation." (ECF No. 426 at 4 n.3) | complain to and enlist the aid of federal agencies in compelling compliance, potentially leading to a DOJ lawsuit. . . . [T]he prospect of a lawsuit by the Attorney General is an essential feature of the package of "remedies, procedures, and rights" that Title II "provides to any person alleging discrimination on the basis of disability." (Initial Br. at 30–31) | the rights of individuals who did not file administrative complaints,' that argument is likewise flawed . . . .[T]he United States Department of Justice may sue . . . because it acts as a consequence of such 'persons' notifying the Department of disability-based discrimination." (ECF No. 676 at 9) |
| "The United States **is not litigating individual claims of, or on behalf of, individual children**." (ECF No. 467-1 at 1) | "**[P]ersons alleging disability discrimination under Title II . . . would have access to a federal administrative scheme that enlists the aid of federal agencies in obtaining relief and potentially would lead to a DOJ enforcement suit**." (Initial Br. at 32–33) | "[T]he Eleventh Circuit did **not** say that a Title II enforcement action by the United States is limited in scope **only to those individuals who submitted complaints**. . . . [T]he Eleventh Circuit **never said that each victim must personally submit his/her own complaint to the Department to be within the scope of a subsequent lawsuit**, nor did it say that every victim needed to be identified by name in an administrative complaint." (ECF No. 676 at 9) |
| "**[The United States] has not brought this action on behalf of individual children for whom it is asserting numerous, individual ADA claims**." (ECF No. 408 at 2) | "[T]he federal administrative enforcement process and **DOJ enforcement suits are among the 'remedies, procedures, and rights' that Title II 'provides' to persons alleging unlawful discrimination**." (Initial Br. at 33) | "Notably, the Eleventh Circuit did not say that the formal filing of a 'complaint' was the only way for 'persons' to notify the Department of disability-based discrimination." (ECF No. 676 at 9 n.4) |
| "[W]e are **not bringing individualized claims** here. . . . [W]e **do not have** | "**Victims of discrimination** seeking relief under the Rehabilitation Act or Title VI | |

8

| | | |
|---|---|---|
| **documents** from the state's production **that support an individualized basis for relief as to these children**. Since we are not bringing an individualized claim . . . these children would be beneficiaries of our injunctive systemic relief in this case that would be based on systemic evidence." (ECF No. 439 at 25, 27) | can pursue either (or both) **a private right of action or a federal administrative enforcement process backed up by a potential DOJ lawsuit.**" (Initial Br. at 23) | |
| | "Victims of discrimination under the two earlier statutes can elect one or both of two alternative enforcement mechanisms to secure compliance with these statutes' anti-discrimination mandates: (1) **a private right of action, or (2) a federal administrative enforcement process backed up by the threat of a DOJ lawsuit if voluntary compliance cannot be achieved**." (Initial Br. at 33) | |

Like the plaintiffs in *Baloco*, the United States should be estopped from shifting its theory of standing yet again to avoid the effect of its earlier arguments. Before the State is forced to endure another 18 months of invasive and expensive discovery, this Court and the Supreme Court should have the opportunity to address threshold questions that might narrow or dispose of this litigation.

### III. THE MAGISTRATE JUDGE'S FACTUAL FINDINGS REVEAL THE UNITED STATES' INABILITY TO PROVE ITS CASE.

In recommending summary judgment as to the United States' damages claim, Magistrate Judge Hunt made findings of fact that equally compel summary judgment as to the United States' claim for equitable relief. ECF No. 672 at 9–10. Magistrate Judge Hunt found, for example, that the United States had wholly failed to produce "any evidence that specifically establishe[d] that [the institutionalized] individuals were unnecessarily institutionalized in violation of Title II, as interpreted in *Olmstead*." ECF No. 501 at 35–37 & n.32. This and other findings of fact from the

9

Report and Recommendation ("R&R") warrant final summary judgment against the United States.

The only claim the United States asserts here is an *Olmstead* claim. That claims has three elements. All three elements—that community placement is appropriate to the individual's needs, the individual does not oppose community placement, and the State can reasonably accommodate the individual's community placement, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999)—hinge on individualized circumstances and require individualized evidence. *See* ECF No. 501 at 26 ("[A]n *Olmstead* violation is highly individualized. . . . To establish an *Olmstead* violation, the claimant must show not only that community-based treatment is 'appropriate' for the disabled individual, a highly individualized determination in and of itself, but also that the individual does not oppose treatment, which will also vary individual by individual."). The R&R makes clear that, after three years of discovery, the United States had no such proof. ECF No. 501 at 35–37. Indeed, the United States continues to disclaim any responsibility for producing individualized proof now, ECF No. 676 at 10–11, just as it did six years ago, ECF No. 501 at 25. The State intends to fully brief this argument, including the R&R's factual findings, in a motion for final summary judgment.

But the Court need not and should not decide this issue now. The State obviously does not seek a ruling on a summary-judgment motion that has not yet been filed. The State asks only that discovery be stayed to allow the State to move for summary judgment *before* shouldering—for the second time—the burden of the federal government's discovery efforts. A stay would facilitate the orderly disposition of threshold matters that bear directly on the scope of future discovery, if any.

Last, to the extent the United States claims that it—or the infinite universe of unidentified individuals on whose behalf it may or may not be suing, regardless of whether they ever alleged discrimination—will face prejudice if discovery is stayed, the assertion is self-serving at best. The United States began its investigation in December 2011 and did not file suit until July 2013. The United States has never sought to expedite proceedings in this Court or in the Eleventh Circuit. Now, when a quicker pace suits it, the United States claims prejudice and demands to litigate full-throttle.

## **CONCLUSION**

The State respectfully requests that the Court exercise its broad discretion to stay discovery pending resolution of the case-dispositive, threshold issues outlined in the State's motion—or, as Chief Judge Altonaga proposed to do, administratively close this case pending a determination on the State's forthcoming petition for a writ of certiorari.

Dated February 22, 2022.	Respectfully submitted,

/s/ *Ashley H. Lukis*
Andy Bardos (FBN 822671)
andy.bardos@gray-robinson.com
James Timothy Moore, Jr. (FBN 70023)
tim.moore@gray-robinson.com
Ashley H. Lukis (FBN 106391)
ashley.lukis@gray-robinson.com
GRAYROBINSON, P.A.
P.O. Box 11189
Tallahassee, Florida 32302-3189
Telephone: 850-577-9090
*Attorneys for Defendant, the State of Florida*