UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-cv-60460-MIDDLEBROOKS/HUNT

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.

**THE STATE OF FLORIDA,**

    **Defendant.**

_____/

**THE UNITED STATES OF AMERICA'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SANCTIONS AGAINST THE STATE OF FLORIDA**

## INTRODUCTION

In contravention of some of the most basic rules of civil practice, the State failed to produce a privilege log until February 28, 2023—after the close of fact discovery, expert discovery, and the deadline for filing dispositive motions.  The log it then produced, which contained over 17,000 entries and failed to include critical information that would allow the United States to assess the State's claims of privilege, was so clearly deficient that within days of the United States' notifying the State of the deficiencies, the State realized it had failed to produce thousands of responsive, non-privileged documents.  The State ultimately produced the bulk of these documents, along with an updated privilege log containing 5,000 entries, on March 24, 2023.  With little more than one month until trial, and the opportunity for deposing State employees long past, the United States must now review not only this new privilege log, but also more than 7,000 newly produced responsive documents.  The prejudice the United States faces is substantial and obvious, as is the State's violation of the Federal and Local Rules.  Sanctions are warranted.

## BACKGROUND

The facts here are simple.  The State was required to produce a privilege log on or around November 7, 2022.  Almost one month prior, on October 10, 2022, Counsel for the State informed the United States that a team of reviewers would be beginning privilege review the next day.  *See* D.E. 797-8, at 1.  When the United States inquired about the State's privilege log on November 7, the State assured the United States that it was "preparing" one.  *See* D.E. 797-4, at 5.  Having not received a privilege log, the United States followed up on February 24, 2023.  *See* D.E. 797-5, at 1.  Between November 7 and February 24, the United States took, defended, or attended nearly sixty depositions, served eight expert reports, filed its witness list, and filed several motions and briefs, including a motion for partial summary judgment.  *See* D.E. 745, 747, 754, 755, 760, 762, 766, 769, 773, 774, 775, 785-1, 785-2, 785-3, 785-5, 785-6, 785-8; Exhibit A, at ¶ 4.

The State produced a privilege log on February 28, 2023, nearly four months after it was due.  D.E. 797-6, at 3–4.  The privilege log produced by the State lacked even the most basic information, such as identification of attorneys and a description of the subject matter, that would allow the United States to assess its claims of privilege.  To the extent the United States was able

1

to evaluate the State's privilege log, the log also revealed that the State improperly withheld thousands of non-privileged, responsive documents.

The State first produced this privilege log ten days before the deadline for pretrial motions, leaving little time to resolve these issues. Given the timing, within one day of receiving the privilege log, the United States communicated these issues to the State. *Id*. at 3. The State failed to respond to the United States' objections for approximately one week. *Id*. at 1–2. The State only responded when the United States sent a third email, explaining that it had been left with no choice but to consider a motion for sanctions. *Id.* Once the State finally responded and agreed to confer, the State only offered two hours in the late afternoon on March 9, the day before pretrial motions were due. *See* Exhibit B, at 1–2. On that call, the State's lone "concession" was to produce an updated privilege log by 11:00 the following morning that still would not address most of the United States' objections. The United States informed the State that it would review the revised privilege log, but that based on the State's representations, the updated log would not address the United States' concerns, and the United States planned to proceed with filing a motion for sanctions.

The next morning, the day that pretrial motions were due, at 10:11 am, the State informed the United States that it would not be producing an updated privilege log and asked for another conferral to discuss a new "solution" based on the conferral the day before. D.E. 797-11, at 1. During the second conferral, which took place approximately 12 hours before the deadline to file pretrial motions, the State confirmed that it had withheld thousands of responsive, non-privileged documents on the basis of privilege, that it would be producing those documents beginning that day, and would conclude the productions within two weeks. D.E. 797-10, at 1–2. The State also informed the United States that it would not be producing an updated privilege log for up to two weeks, and that the revised log would contain approximately 3,100 entries. *Id*.

Since the United States filed its motion for sanctions on March 10, the State has produced 7,071 documents. Exhibit A, at ¶ 5–6. The State produced 2,062 documents on March 10. *Id.* at ¶ 5. The State produced the remaining 5,009 documents, as well as an updated privilege log with over 5,100 entries, at 9:46 pm on March 24, less than ten minutes before it filed its opposition to the United States' motion for sanctions. *Id.* at ¶ 6; Exhibit C, at 1.

2

**ARGUMENT**

**I.    The State Was Required to Produce a Privilege Log.**

The State argues that it was not required to produce a privilege log because all documents that would be included fall under the exemption provided in Local Rule 26.1(e)(2)(C). The State's argument that it was not required to produce a privilege log relies on an inaccurate and overly broad interpretation of Local Rule 26.1(e)(2)(C). Local Rule 26.1(e)(2)(C) provides that a party must provide a privilege log of all documents that were withheld on the basis of privilege, except for "written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action." As the cases cited by the State make clear, Local Rule 26.1(e)(2)(C)'s exception applies to communications between a party and its *litigation counsel* that are related to the litigation. *In re Denture Cream Prod. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5057844, at *20 (S.D. Fla. Oct. 18, 2012) (emphasis added) (Local Rule 26.1(e)(2)(C) "presumes that communication between a party and its *litigation* counsel after the commencement of litigation are privileged"); *United States ex rel. Keeler v. Eisai, Inc.*, No. 09-22303-CV, 2012 WL 12842995, at *3 (S.D. Fla. Sept. 27, 2012) (holding that communications between a party and his litigation counsel and related work product that were created for purposes of the litigation were not required to be disclosed under Local Rule 26.1(e)(2)(C)); *Arugu v. City of Plantation*, No. 09-61618-CIV, 2010 WL 11515702, at *3 (S.D. Fla. Oct. 26, 2010) (finding that Defendant's counsel was not required to list sworn statement of Plaintiff's children that was taken for purposes of the litigation in the privilege log). The work product protection referenced in the exception is similarly limited to documents that have been prepared "in anticipation of some likely litigation or as integral preparation for trial." *Henderson v. Holiday CVS, L.L.C.,* 269 F.R.D. 682, 688 (S.D. Fla. 2010).

The vast majority of entries listed in the March 24, 2023 privilege log (more than 95%) do not fall under the State's claimed exemption. The descriptions for these documents indicate that they were sent within a State agency, not to litigation counsel, for purposes unrelated to this

3

litigation.[1] *See, e.g.*, Exhibit D, FLPriv_00159, FLPriv_00641, FLPriv_01348, FLPriv_04488.[2] For these documents, Federal Rule of Civil Procedure 26(b)(5)(A), Local Rule 26.1(e)(2), and the parties' Discovery Stipulation (D.E. 577-13, at 11) all require the State to produce a compliant privilege log.

Further, Local Rule 26.1(e)(2)(C) does not provide the blanket exception that the State suggests. The State ignores the Court's holding in *United States ex rel. Keeler v. Eisai, Inc.*, which still required the party to categorically list post-litigation communications in its privilege log. The Court's full statement reads:

> The Court notes that individually logging years of privileged attorney communications would be burdensome and of little benefit. Therefore, the Court will permit the [party] to categorically group post-litigation attorney communications for which a privilege is asserted. . . . [T]he [party] must justify its assertion of privilege with regard to each category, and the description of each category must provide sufficient information for [the opposing party] to assess any potential objections to the assertions of privilege, such as (1) the general nature of the document; (2) the approximate time period of the privileged communications; and (3) the identity and position of all authors and recipients.

2012 WL 12842995, at *3 (citations omitted). The State provided none of this information in its February 28, 2023 privilege log.

Even if the State believed that it was not required to produce a privilege log under Local Rule 26.1(e)(2)(C), it was required to inform the United States of its belief. *Norwood v. Ideal Collection Servs., Inc.*, No. 07-81131-CIV, 2008 WL 11333229, at *2 (S.D. Fla. Sept. 19, 2008). The State never informed the United States that it did not believe a privilege log was required. To the contrary, the State repeatedly communicated to the United States that it was preparing a

---

[1] In reviewing the March 24, 2023 privilege log, the United States identified 255 responsive documents that reflect communications between the State and its litigation counsel, GrayRobinson and Shutts & Bowen, or work product prepared for purposes of this litigation. *See* Exhibit E. The United States does not seek waiver of privilege or production of these documents.

[2] The privilege logs produced by the State pre-appeal include communications and documents that the State now claims it is not required to log. Specifically, these logs include communications and documents sent within a State agency or agencies for purposes unrelated to this litigation and that were sent after the United States filed its initial complaint in this matter on July 22, 2013. *See, e.g.*, Exhibits F, G, H.

privilege log. Instead, the State raised this argument for the first time in its opposition to the United States' motion for sanctions.

For these reasons, the State's argument that it was not required to produce a privilege log fails.

## II.     The United States' Motion for Sanctions is Timely.

The State next argues that the United States' motion is untimely. D.E. 815 at 8–10. Once again, the State misreads the Local Rules. Local Rule 26.1(g)(2)(A)(i) states that a party must submit an objection to a privilege log "within twenty-eight (28) days of service of the written response or objection that is the subject of the dispute."

The United States has complied with the Local Rules. The United States did not learn of the issues that necessitated this motion until February 28, 2023, when the State first served its privilege log. It was on that day that the United States first became aware that the State's privilege log did not comply with Rule 26, Local Rule 26.1, or the parties' Discovery Stipulation and did not allow the United States to assess the State's claims of privilege. The United States also learned on that date that the State likely improperly withheld thousands of responsive, non-privileged documents. When the United States became aware of these issues upon receipt of the State's privilege log, it notified the State of its concerns within one day. The United States allowed for as much time as possible to resolve the issues, but the State did not respond to the United States' repeated attempts to discuss the issue until two days before the deadline for pretrial motions. The United States filed this motion on March 10, the deadline for pretrial motions, nine days after raising its objections with the State, and well within 28 days of service of the privilege log, which is the time period provided for in Local Rule 26.1(g)(2)(A)(i). [3]

Moreover, the State's argument that the United States' motion is untimely assumes that the State's delay in producing a privilege log is the only grounds for the United States' motion. That is not true. Even with the delay, had the State provided a sufficient privilege log and not improperly withheld thousands of documents, the United States would have had no need to file this motion because any prejudice faced by the United States would have been *de minimis*.

---

[3] Even assuming the State is correct, and the previous version of Local Rule 26.1(g) or the current Local Rule 26.1(g)(2)(A)(iv) apply, the United States did not become aware of any issue with the State's withholding of documents on the basis of privilege until February 28, 2023, and thus was well within the 30-day time period when it filed this motion on March 10, 2023.

### III. The United States Attempted to Promptly Resolve These Issues, but the State Repeatedly Delayed Resolution.

To the extent that the State claims these issues "could have been promptly addressed and resolved long before this critical pre-trial period," the delay is solely a consequence of the State's repeated failures and inaction. D.E. 815, at 10. First, the State failed to serve its privilege log until ten days before the deadline for pretrial motions, leaving little time to resolve any issues. Because the United States was aware of this deadline and understood that time was of the essence, the United States communicated its objections about the State's privilege log within one day of receiving it. Florida responded that "someone" would "be in touch." D.E. 797-6, at 2. Having heard nothing further, the United States followed up again six days later and again asked to schedule a call. *Id.* Having again received no response from the State, the United States emailed again the following day, two days before the deadline for pretrial motions. *Id.* at 1–2. The United States made itself available for two conferrals in less than 24 hours and conferred in good faith. Exhibit B, at 1–2; D.E. 797-10, at 1–2; D.E. 797-11, at 1. However, by the time the parties conferred, the State's repeated delays and inaction left few, if any, options to address the prejudice the United States faced. When the State informed the United States that it would be producing thousands of documents weeks before trial and would not be producing an updated privilege log for two more weeks, the United States was left with no choice but to seek redress from this Court.

Florida attempts to deflect from its own failures by shifting the blame to the United States. However, it is not the United States' responsibility to ensure that the State complies with its Rule 26 obligations. *RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, 489 F. Supp. 3d 907, 916 (W.D. Mo. 2020); *Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643, 652–53 (D. Nev. 2010); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 182 (S.D.N.Y. 2010). In *Bullion Monarch Mining, Inc.*, when Defendant represented that it was working on a privilege log, but failed to produce a log, Plaintiff first raised the issue with the Court approximately seven months after the Defendant's representation. 271 F.R.D. at 652–53. The Court found that it was reasonable for Plaintiff to rely on Defendant's statements "that a privilege log would soon follow." *Id.* Rather than denying the motion as untimely, as the State suggests, the Court recognized that it was "obvious" that during the seven months between Defendant's representations and raising the issue, Plaintiff was occupied with reviewing thousands of pages

6

of documents, drafting motions for summary judgment, and taking depositions. *Id.* The Court concluded that Defendant had "abdicated its discovery obligations" and concluded that it was "left with little choice but to find that [Defendant] has waived its privilege as to every document designated in the privilege log, including those designated as protected under the work product doctrine." *Id.* at 653.

As in *Bullion*, between November 7, 2022 (when the State represented that it was preparing a privilege log) and February 24, 2023 (when the United States again inquired about a privilege log), the United States took, defended, or attended nearly sixty depositions, served eight expert reports, filed its witness list, and filed several motions and briefs, including a motion for partial summary judgment. *See* D.E. 745, 747, 754, 755, 760, 762, 766, 769, 773, 774, 775, 785-1, 785-2, 785-3, 785-5, 785-6, 785-8; Exhibit A, at ¶ 4. It was reasonable for the United States to rely on the State's representation and focus its limited resources on the intense demands of this litigation.

The State's argument presumes that the United States should not have relied on the State's own statements. The State claims that the United States should have known on November 7, 2022 that the State would not produce a privilege log. Yet, on that very day, the State assured the United States that it was "preparing" a privilege log. *See* D.E. 797-4, at 5. The United States was entitled to rely on the State's representations. *Bullion*, 271 F.R.D. at 652–53. Had the State informed the United States that it did not intend to serve a privilege log, or intended to serve one months after the close of fact discovery, the United States would have objected, and proceeded with filing a motion to compel.

The United States repeatedly attempted to obtain a privilege log from the State, relied on the State's representations that it would produce one, and repeatedly attempted to confer with the State once it finally produced a log that turned out to be sorely deficient. It was the State that failed to produce a log until late February, improperly withheld thousands of responsive documents, delayed discussions about its deficient log, and stalled any resolution until it was too late to avoid serious prejudice to the United States.

**IV.     Sanctions Against the State are Warranted.**

    A.  *The State's Purported Burden is No Excuse for its Failures.*

The State has provided no explanation as to why it failed to serve a privilege log until months after it informed the United States that it was reviewing document productions for

privilege and was "preparing" a privilege log. *See* D.E. 797-4, at 5. The State also fails to explain why its initial privilege log did not provide the information necessary for the United States to assess its claims of privilege, as required by Federal Rule 26, Local Rule 26.1, and the parties' Discovery Stipulation.

The State seems to suggest that its failures should be excused because of the "burden" of drafting a privilege log. D.E. 815, at 13. As experienced civil litigation counsel, the State should have known that "determining which documents are protected from disclosure by a privilege or other protection (and preparing a privilege log addressing each such document)" is a "time-consuming exercise" that "must be done before production." *Jackson Women's Health Org. v. Dobbs*, No. 3:18-CV-171-CWR-FKB, 2022 WL 507665, at *2 (S.D. Miss. Feb. 18, 2022). Given that preparing a privilege log almost always imposes a burden on the preparing party, it cannot be right that the burden of preparing a privilege log excuses a party from complying with its Rule 26 obligations. If that were the case, every party would be excused from complying with the Federal and Local Rules.[4]

Had the State prepared an appropriate privilege log during fact discovery, much of its purported burden could have been avoided. Instead, the State is now trying to weaponize its own failures. Within two weeks, the State was able to remove approximately 12,000 entries from its privilege log because those documents were either not privileged or non-responsive. The State's March 24, 2023 log continues to be overinclusive, as it lists documents that are "non-responsive or have been produced." Exhibit C, at 1. Had the State's privilege log only listed documents it was required to include (responsive documents that it is withholding on the basis of privilege), the State's privilege log could have been approximately 1,130 entries, a more reasonable number for a litigation of this scale.

---

[4] The State's attempt to draw a comparison between its initial privilege log and the United States' exhibit list only underscores the inadequacy of the State's privilege log. Privilege logs and exhibit lists are subject to very different requirements. *Compare* Fed. R. Civ. P. 26(a)(3)(iii) and 26(b)(5)(A). The State admits that its initial privilege log was an auto-generated list that provided no descriptions of the withheld documents beyond the file name of each document. While this approach is appropriate for an exhibit list, where both parties already have access to the documents listed, it is not adequate for a privilege log, as it does not provide sufficient information on the privilege being asserted as justification for withholding each document.

The State's purported "burden" is also no excuse to improperly withhold thousands of non-privileged, responsive documents. The State provides no explanation for its improperly withholding documents except to claim, without any support, that its decision to withhold entire document families was "reasonable." D.E. 815, at 13. Even assuming that all of the improperly withheld documents were non-privileged attachments of privileged cover emails (or non-privileged emails attaching privileged documents), which they are not, the State's decision to withhold entire document families was not only *not* "reasonable," but is not in line with the Federal Rules. The State should have determined privilege on a document-by-document basis, only withholding documents that it found to be privileged. *See Townhouse Rest. of Oviedo, Inc. v. NuCO2, LLC*, No. 19-14085-CIV, 2020 WL 4923732, at *6 (S.D. Fla. June 24, 2020) (a document does "not become privileged just by being attached to a privilege email communication"); *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, No. 3:16-MD-2734, 2017 WL 6757558, at *7 (N.D. Fla. Dec. 29, 2017) ("Simply because factual information has been transmitted to an attorney does not make the underlying factual information privileged.").

B.   *The United States Has Shown that Sanctions are Warranted.*

The State next argues that sanctions are not warranted because the United States has not shown that the State acted in bad faith. D.E. 815, at 10–15. However, "[a] bad-faith finding is not required" for a Court to find that a party waived privilege by failing to produce a timely privilege log. *Deegan v. Nexstar Broad., Inc.*, No. 3:14-CV-1419-J-39PDB, 2015 WL 7272687, at *2 (M.D. Fla. Nov. 18, 2015) (citing *Devaney v. Continental Amer. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993)). Courts decide waiver on a "case-by-case basis" based on the multi-factor holistic test that the United States described in its motion. *See id*. (explaining that courts consider "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged . . . ; the timeliness of the objection and the accompanying information . . . ; the magnitude of the document production; and other particular circumstances" making it unusually easy or difficult to respond).

As the United States explained in its motion, each of these factors weighs in favor of finding that the State waived privilege. Specifically, the State's initial privilege log did not allow the United States to evaluate its privilege claims; the State's privilege log was months overdue; the magnitude of the production was typical for a case of this scale; and the State improperly

9

withheld thousands of documents and produced them weeks before trial. Notably, the State does not dispute the United States' analysis of these factors.

        C. *Sanctions are Required to Remedy the Prejudice Faced by the United States.*

Despite the State's attempts to minimize the prejudice faced by the United States, there is no doubt that the United States has been harmed as a result of the State's action. In the face of an already expedited schedule, with only weeks until trial, the United States must now review thousands of documents that the State improperly withheld. Even under the best circumstances, such a review would take at least 120 hours. The United States' attorneys must now take time away from trial preparations and other work to review these documents. In addition, the United States was prevented from asking witnesses about these documents and relying on them during dispositive motions briefing. Given the prejudice faced by the United States, sanctions against the State are warranted.

The United States understands the importance of attorney-client privilege and work product protection and has not filed this motion lightly. However, finding that the State waived privilege is the most appropriate sanction in light of the State's failures to timely produce a sufficient privilege log. *See, e.g.*, *RightCHOICE*, 489 F. Supp. 3d at 915; *Bell v. Scully Co.*, No. 11-81140-CIV, 2012 WL 9384471, at *5 (S.D. Fla. May 10, 2012) (Middlebrooks, J.); *Bullion*, 271 F.R.D. at 652–53.

## CONCLUSION

For these reasons, the Court should grant the United States' motion for sanctions against the State of Florida.

| | |
|---|---|
| **Dated:** March 31, 2023 | Respectfully submitted, |

| | |
|---|---|
| JUAN ANTONIO GONZALEZ<br>United States Attorney<br>Southern District of Florida | REBECCA B. BOND<br>Chief |
| */s/ Veronica Harrell-James*<br>VERONICA HARRELL-JAMES<br>Assistant United States Attorney<br>Fla. Bar No. 644791<br>99 N.E. 4th Street<br>Miami, Florida 33132<br>Telephone: (305) 961-9327<br>Facsimile: (305) 530-7139<br>Veronica.Harrell-James@usdoj.gov | ANNE S. RAISH<br>Principal Deputy Chief<br><br>ELIZABETH E. McDONALD<br>Deputy Chief<br><br>*/s/ Janelle Geddes*<br>JANELLE GEDDES, Bar ID A5502929<br>LINDSEY WEINSTOCK, Bar ID A5502063<br>Trial Attorneys<br>Disability Rights Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W. (4CON)<br>Washington, D.C. 20530<br>Telephone: (202) 616-2221<br>Facsimile: (202) 307-1197<br>Janelle.Geddes@usdoj.gov<br><br>*Counsel for Plaintiff United States of America* |